FILED'10.JAN 6 14:55USDC-ORP

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SHERRY L. STROH, | )   Civil No. 08-1148-JE |
| | ) |
| Plaintiff, | )   FINDINGS AND |
| | )   RECOMMENDATION |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Richard F. McGinty
McGinty & Belcher
P.O. Box 12806
Salem, OR 97301

      Attorney for Plaintiff

Kent S. Robinson
Acting U.S. Attorney
Adrian L. Brown
Asst. U.S. Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

FINDINGS AND RECOMMENDATION - 1

David Morando
Regional Chief Counsel
David J. Burdett
Special Asst. U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

     Attorneys for Defendant

JELDERKS, Magistrate Judge:

     Plaintiff Sherry Stroh brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security (the

Commissioner) denying her applications for Disability Insurance Benefits (DIB) and

Supplemental Security Income (SSI).  Plaintiff seeks an order remanding this action to the

Social Security Administration (the Agency) for an award of benefits, or for further

proceedings.

     For the reasons set out below, the decision of the Commissioner should be affirmed.


**Procedural Background**

     Plaintiff filed applications for DIB and SSI on August 30, 2005, alleging that she had

been disabled since August 22, 2004, because of fibromyalgia, restless leg syndrome, a sleep

disorder, chronic pain, and depression.  Following denial of her applications initially and

upon reconsideration, plaintiff timely requested a hearing before an Administrative Law

Judge (ALJ).

     On January 18, 2007, a hearing was held before ALJ Catherine Lazuran.  Plaintiff;

David Stroh, Jr., her husband; and Kay Wise, a vocational expert (VE); testified at the

hearing.

FINDINGS AND RECOMMENDATION - 2

On May 30, 2008, ALJ Lazuran issued a decision finding that plaintiff was not disabled within the meaning of the Social Security Act (the Act) because she could perform her past relevant work as a secretary and billing clerk. That decision became the final decision of the Commissioner on August 20, 2008, when the Appeals Council denied plaintiff's request for review. Plaintiff seeks review of that decision in this action.

## **Factual Background**

Plaintiff was born on February 8, 1963, and was 41 years old on the date of the alleged onset of her disability. She has work experience as a billing clerk, a daycare provider, an electronics tech assembler, and a secretary.

## **Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled.

If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant. <u>Tackett</u>, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. <u>Id.</u>

## Medical Record

Plaintiff's medical record is discussed in detail in the ALJ's decision, and will not be addressed here. The critical portions of that record include the records of Dr. Nolan, Dr. Inkeles, and Dr. Brewer. These records are thoroughly discussed in the parties' memoranda, and will be addressed in the discussion below.

## ALJ's Decision

At the first step of the disability analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability on May 22, 2004.

At the second step, the ALJ found that plaintiff's "borderline fibromyalgia or myofascial pain syndrome" was a "severe impairment" within the meaning of the relevant regulations. She further found that plaintiff's "medically determinable mental impairment of dysthymia" was not a "severe" impairment. Plaintiff disputes the ALJ's finding that she has "borderline fibromyaglia or myofascial pain syndrome," and asserts instead that she has fibromyalgia.

At the third step, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or equaled the listed impairments in 20 C.F.R. Pt. 404, Subpt. P. Plaintiff does not dispute this finding.

The ALJ next assessed plaintiff's residual functional capacity.  She found that plaintiff had the capacity to lift and/or carry ten pounds occasionally, had no limits on sitting, could stand and/or walk for two hours in an eight-hour workday, could occasionally balance, kneel, crouch, crawl, stoop, could rarely climb, and required a "sit or stand option."  In reaching this conclusion, the ALJ found that, though plaintiff's medically determinable impairments could reasonably be expected to produce some of the symptoms plaintiff alleged, her statements "concerning the intensity, persistence and limiting effects of these symptoms" were not wholly credible.  Plaintiff disputes both the ALJ's residual functional capacity assessment and the ALJ's conclusion that she was not wholly credible.

Based upon this assessment of plaintiff's residual functional capacity, at the fourth step of disability analysis, the ALJ found that plaintiff was capable of performing her past relevant work as a secretary and as a billing clerk.  Accordingly, without continuing to step five of the evaluation process, she concluded that plaintiff was not disabled within the meaning of the Social Security Act.

### Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ made four significant errors in evaluating her claims. First, she asserts that the ALJ erred in improperly evaluating the medical record, and particularly in failing to fully credit the opinions of Drs. Nolan and Inkeles. Second, she contends that the ALJ erred in failing to find that she was wholly credible. Third, she argues that the ALJ improperly assessed the credibility of lay witnesses. Finally, plaintiff argues that the ALJ erred in assessing her residual functional capacity, and in concluding that she could perform her past relevant work as a secretary and billing clerk.

## 1. ALJ's Assessment of Medical Record and Medical Opinions

The ALJ is responsible for resolving conflicts that exist in a claimant's medical record. E.g., Carmickle v. Commissioner, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Benton

v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003)). Physicians who have had "the most

significant clinical relationship with the claimant are generally entitled to more weight than

those physicians with lesser relationships." Id. Consequently, an ALJ must provide "clear

and convincing reasons" for rejecting a treating physician's uncontradicted medical opinions.

Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). To support the rejection of a treating

physician's opinion that is contradicted, an ALJ must provide "specific and legitimate reasons

that are supported by substantial evidence in the record." Id. If the evidence before the ALJ

is subject to more than one rational interpretation, the court must defer to the ALJ's

conclusion. Batson v. Commissioner, 359 F.3d 1190, 1197-98 (9th Cir. 2004).

Plaintiff contends that the ALJ erred in concluding that she has "borderline

fibromyalgia or myofascial pain syndrome." She contends instead that she has fibromyalgia,

not "borderline" fibromyalgia, and asserts that the ALJ erred in failing to account for her

fibromyalgia in assessing her residual functional capacity. In support of this assertion,

plaintiff cites the opinion of Dr. Raymond Nolan, plaintiff's treating physician, who opined in

October, 2004, that plaintiff's "onset of symptoms of flu-like illness with fatigue and muscle

pain" was consistent with fibromyalgia.

She also cites the opinion of Dr. Stephen Inkeles, who became her treating physician

in 2007. Dr. Inkeles diagnosed plaintiff with "fibromyalgia with sleep disturbance" in May,

2007. In a chart note dated March 28, 2008, Dr. Inkeles diagnosed

> FIBROMYALGIA, DISABLING SECONDARY TO PAIN AND RELATED
> PHENOMENA OF FREQUENT BOUTS OF OVERWHELMING
> FATIGUE, PRECLUDING ABILITY TO PERFORM IN A WORKING
> ENVIRONMENT ON A DAY TO DAY BASIS WITHOUT
> UNACCEPTABLY HIGH ABSENCES.

He also diagnosed depression and restless leg syndrome.

Plaintiff contends that the ALJ erred in rejecting the diagnoses of these doctors, and instead adopting the "impression" of Dr. Lawrence Neville, that plaintiff had myofascial pain syndrome or borderline fibromyalgia. Though I agree that the ALJ erred in failing to specifically state why she rejected the opinion of Dr. Nolan, that error was harmless because the ALJ's reasons for rejecting the opinion of Dr. Inkeles applied with equal force to Dr. Nolan, and the ALJ provided legally sufficient support for her conclusion that plaintiff suffered from "borderline fibromyalgia or myofascial pain syndrome."

As defendant correctly notes, Dr. Inkeles' fibromyalgia diagnosis was based largely on plaintiff's subjective complaints concerning her symptoms, including fatigue and sleep difficulties, and upon a finding that plaintiff had 8 to 10 tender points. As defendant also correctly notes, a diagnosis of fibromyalgia requires evidence of fatigue, disturbed sleep, stiffness, and pain in 11 of 18 "tender points" found in specific fixed positions on the body. Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001), see also, fibromyalgia criteria of American College of Rheumatology, http://www.rheumatology.org/publications/classification/fibromyalgia/fibro.asp?aud=mem.

The ALJ's conclusion that plaintiff had borderline fibromyalgia or myofascial pain syndrome was supported by substantial evidence in the medical record, including the opinion of Dr. Neville, and the ALJ provided specific and legitimate reasons for not fully crediting the opinion of Dr. Inkeles, one of plaintiff's treating physicians. The ALJ noted that a finding of 8 to 10 "tender points" did not meet the criteria for fibromyalgia. The ALJ gave "some weight" to Dr. Inkeles' opinion concerning plaintiff's diagnosis and the severity of her symptoms. However, she characterized his opinion as vague, and concluded that it was not supported by objective medical evidence, but instead relied largely on plaintiff's subjective

FINDINGS AND RECOMMENDATION - 9

complaints, which, as discussed below, she found were not wholly credible. The ALJ

correctly noted that, though Dr. Inkeles stated that plaintiff had 8 to 10 tender points, this

number was not sufficient to "meet the criteria for fibromyalgia." She also relied on the

opinion of Dr. Kurt Brewster, an examining physician, who concluded that there were no

physical findings that supported the "extensive limitations" plaintiff placed on herself, and

assessed plaintiff's functional capacity as sufficient to allow her to work full time. The ALJ

stated that Dr. Brewster was "more objective and thorough." She also concluded that he was

able to assess her credibility because, unlike Dr. Inkeles, he had administered a Waddell's

test, which was positive, indicating an exaggeration of symptoms. The ALJ found that

Dr. Brewster's opinion was consistent with the "objective medical evidence," including the

conservative treatment plaintiff had received, and treatment records indicating that plaintiff

was not in distress.

The ALJ provided sufficient reasons for crediting Dr. Brewster's opinion, and for not

fully crediting the opinion of plaintiff's treating physician. An ALJ may reject a physician's

opinion which is based upon a claimant's subjective reports which are not found to be

credible. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). As discussed below,

the ALJ had substantial reasons, including the positive Waddell's test, for concluding that

plaintiff's reports concerning her condition and symptoms were not wholly credible. The

ALJ cited specific and legitimate reasons for crediting opinions of Dr. Brewster which

contradicted the opinions of plaintiff's treating physicians. These included Dr. Brewster's

finding that plaintiff had fewer tender points than the minimum number required for a

diagnosis of fibromyalgia under accepted criteria, the results of the Waddell's test, the

thoroughness of Dr. Brewster's examination, which included exertional testing, evidence of

plaintiff's treatment, plaintiff's activities of daily living, and the consistency of Dr. Brewster's opinion with objective medical evidence in the record. Nor did the ALJ err in relying on Dr. Brewster's use of the Waddell's test. Dr. Brewster stated that, though he did not routinely perform that test, he administered it to plaintiff because, in the context of his exam there were "other findings which support non-physiological signs of pain and symptom magnification."

As noted above, the ALJ erred in failing to specifically address Dr. Nolan's opinion that plaintiff had fibromyalgia. However, errors that are not prejudicial to a claimant, and which are irrelevant to an ALJ's ultimate conclusion concerning disability, are harmless. E.g., Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006). In the context of her substantial and legally sufficient bases for rejecting Dr. Inkeles' opinion concerning the fibromyalgia diagnosis and the severity of plaintiff's symptoms, the ALJ's failure to specifically address Dr. Nolan's opinion was a harmless error. Though Dr. Nolan diagnosed fibromyalgia, his opinion did not include any functional limitations based upon that diagnosis. Instead, the opinion as to functional limitations was included in the assessment of Dr. Inkeles, which the ALJ provided sufficient support for rejecting. Given that Dr. Inkeles provided the more detailed assessment, a legally sufficient rejection of his opinion necessarily applied to the less detailed opinion of Dr. Nolan as well, which was based upon an examination that did not find the minimum number of tender points required for a fibromyalgia diagnosis. Given that Dr. Nolan's opinion was less supportive of a finding of disability than that of Dr. Inkeles, and that the ALJ provided legally sufficient reasons for rejecting Dr. Inkeles' opinion, the ALJ's failure to specifically address Dr. Nolan's opinion was harmless.

2. <u>ALJ's conclusion that plaintiff was not wholly credible</u>

An ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). If a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony concerning the severity of symptoms merely because they are unsupported by objective medical evidence. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998) (<u>citing</u> <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 343 (9th Cir. 1990)(*en banc*)). Unless there is affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. <u>Id.</u> (quoting <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995)).

An ALJ rejecting a claimant's testimony may not simply provide "general findings," but instead must identify the testimony that is not credible and the evidence that undermines the claimant's complaints. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993). In addition, SSR 96-7 requires an ALJ to consider the entire record and to evaluate several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."

Plaintiff here produced medical evidence of medically determinable impairments that reasonably could be expected to produce some of the symptoms she alleged, and there was no affirmative evidence that plaintiff was malingering. Accordingly, the ALJ was required to provide clear and convincing reasons for concluding that plaintiff's "statements concerning

the intensity, persistence and limiting effects of these symptoms are not credible to the extent

they are inconsistent with the residual functional capacity assessment . . . ."

The ALJ met that burden.  She cited plaintiff's ability to engage in a wide range of

activities of daily living, including "doing most of the housework for a family of four;

shopping; cooking; using a treadmill or taking walks; seeing friends; camping out once a year

in a tent; sewing; spinning and knitting as hobbies; using a computer and internet; doing

laundry; and driving."  The ALJ cited inconsistencies between plaintiff's own statements

concerning her activities, and inconsistencies between statements made by plaintiff and by

plaintiff's husband.  The ALJ further cited plaintiff's evidence indicating that her pain had

"not been at an extreme level and that medication has been relatively effective in controlling

her pain."  She also noted that the treatment plaintiff had received for her "allegedly disabling

impairment" had "been essentially routine and conservative in nature."  The ALJ also noted

that Dr. Brewster had administered a Waddell's test which indicated that plaintiff was

exaggerating her symptoms.  These reasons were sufficient to support the ALJ's credibility

determination.


3. ALJ's evaluation of credibility of lay witness testimony

Plaintiff's mother, Twila Read, and plaintiff's husband, Robert Stroh, testified at the

hearing before the ALJ.  The ALJ found Ms. Read to be "fairly credible but not to the extent

of providing evidence that plaintiff is wholly disabled."  The ALJ stated that Mr. Stroh

"referred to extensive activities by the claimant," and concluded that he seemed "more

credible" than plaintiff.

Plaintiff contends that the ALJ failed to provide legally sufficient reasons for failing to wholly credit the testimony of these lay witnesses.

I disagree. An ALJ "must give reasons that are germane" for rejecting the statements of a lay witness. Id. at 919. Here, though the ALJ did not provide extensive reasons for not wholly crediting the testimony of the lay witnesses, she provided reasons that were germane to each. She noted that Ms. Read's statements concerning the limiting nature of plaintiff's symptoms were contradicted by her statements indicating that plaintiff was able to engage in a wide range of activities. Though the ALJ obviously did not agree with Mr. Stroh's opinion that plaintiff's fatigue would interfere with work, she credited his testimony to a substantial degree. The ALJ's observation that Mr. Stroh referred to plaintiff's "extensive activities" provided a germane reason for rejecting his conclusions as to the severity of her symptoms.

4. ALJ's evaluation of plaintiff's severe impairment and residual functional capacity analysis

a. Determination of plaintiff's severe impairment

Plaintiff contends that the ALJ erred in failing to find that plaintiff had fibromyalgia, a severe impairment, in failing to properly evaluate the effects of that impairment and plaintiff's non-severe impairments, and in failing to properly evaluate plaintiff's residual functional capacity. She contends that the ALJ did not properly assess the functional limitations arising from her restless leg syndrome, sleep disorder, and fatigue, and erred in not attributing functional limitations to dysthymia or depression. Plaintiff also contends that the ALJ erred in failing to incorporate the slow performance that Dr. Cole observed into the assessment of her residual functional capacity.

I disagree. As noted above, at step two of her analysis, the ALJ found that plaintiff had "borderline fibromyalgia or myofascial pain syndrome," and that this was a "severe" impairment. Plaintiff contends that the use of the term "or" indicates that the ALJ "possibly" found that borderline fibromyalgia was "possibly" a severe impairment. However, there is no question that the ALJ found that plaintiff has a severe impairment. Her uncertainty as to the precise nature of that impairment simply reflects Dr. Neville's diagnosis, and the examinations that did not show enough tender points to satisfy the criteria for diagnosing fibromyalgia. As the ALJ correctly noted, Dr. Neville's fibromyalgia screening indicated that plaintiff had 10 of 18 positive "tender points" and 2/3 positive control points, and Dr. Neville diagnosed plaintiff with "borderline fibromyalgia syndrome versus myofascial pain syndrome." This evidence, and the examinations by other doctors which showed fewer tender points than the minimum number required to establish a fibromyalgia diagnosis, supported the ALJ's "severe impairment" finding.

The ALJ is responsible for determining a claimant's residual functional capacity, and no medical provider's opinion or testimony is conclusive on this issue. SSR 96-5p. A claimant's residual functional capacity is the most the claimant can do, considering her impairments and limitations. SSR 96-8p. In assessing a claimant's residual functional capacity, the ALJ must base her decision on the evidence as a whole, and must consider the entire record and explain how she weighs the medical evidence and testimony. Id.

The ALJ's residual functional analysis must be affirmed if the ALJ applied the correct legal standard, and her decision is supported by substantial evidence in the medical record. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). Here, the ALJ cited substantial evidence in the medical record supporting her residual functional capacity analysis, and her

analysis conformed to the requirements of relevant regulations and Social Security Rules. In assessing plaintiff's residual functional capacity, the ALJ carefully reviewed the medical record developed by treating, examining, and consulting medical sources. She also considered the evidence provided by plaintiff and lay witnesses, and supported her analysis of the weight accorded to that evidence. She noted Dr. Brewster's belief that plaintiff felt limited by fatigue, and his opinion that physical findings did not support the "extensive limitations" that plaintiff placed on herself. The ALJ noted that Dr. Brewster had recommended psychological testing to determine if depression was affecting plaintiff's ability to function, and that subsequent psychological testing, which she discussed in her opinion, had yielded "only mild findings." She reviewed the opinion of Dr. Brewster concerning plaintiff's functional capacity, and gave that opinion "significant weight" because it was "based upon an objective and thorough medical examination." She reviewed the opinion of Dr. William Habjan, a state agency medical consultant who had reviewed plaintiff's record to determine her residual functional capacity, and stated the basis for the weight she gave his opinion. In addition, she reviewed at length the opinion of Dr. Inkeles, plaintiff's treating physician, and provided substantial reasons, supported by the record, for concluding that other medical sources had provided a more accurate assessment of plaintiff's residual functional capacity.

The ALJ did not err in failing to assess functional limitations based upon plaintiff's non-severe impairments of restless leg syndrome, sleep disorder, and fatigue, or in not assessing work related functional limitations based upon plaintiff's dysthymia or depression. As the Commissioner correctly notes, the record indicates that plaintiff's sleep difficulties have been responsive to treatment, and the ALJ addressed the issue of fatigue in her

discussion of the opinion of Dr. Brewster. The ALJ noted that Dr. Brewster had opined that plaintiff was limited by her unexplained muscle pain and fatigue, and had assessed plaintiff's functional capacity in light of those limitations. She did not err in giving "significant weight" to Dr. Brewster's opinion, which, as she correctly noted, was based upon a thorough examination. The Commissioner correctly asserts that, regardless of the source of plaintiff's fatigue, the ALJ's conclusions concerning the impact of fatigue on her residual functional capacity were supported by substantial evidence and were free from legal error. As to plaintiff's dysthymia or depression, the ALJ noted that psychological testing had showed only mild findings, and that plaintiff testified that she did not believe that she has ever suffered from a psychological problem, and did not think that depression affected her ability to work. The ALJ's conclusion that plaintiff had no functional limitations arising from dysthymia or depression was supported by substantial evidence.

Finally, I agree with the Commissioner's assertion that any error arising from the ALJ's failure to incorporate the mild limitations in concentration, persistence, and pace into the residual functional capacity assessment was harmless. The ALJ provided sufficient reasons for concluding that plaintiff's mental impairment, from which these limitations arise, is not "severe" within the meaning of relevant regulations. An impairment is not severe if it is a slight abnormality that "has no more than a minimal effect on an individual's ability to work." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); SSR 85-28. Given that plaintiff's mental impairment was reasonably found to cause no more than a minimal effect on her ability to work, the ALJ's failure to incorporate mild limitations in concentration, persistence, and pace into the residual functional capacity was harmless error. See Stout, 454 F.3d at 1055 (errors not prejudicial and not affecting ALJ's determination of disability

FINDINGS AND RECOMMENDATION - 17

are harmless).  In addition, as the Commissioner correctly notes, plaintiff did not show how

these mild limitations would affect her ability to perform her past work as a secretary or

billing clerk.  See, e.g., Carmickle, 533 F.3d at 1166 (at step four of disability analysis,

plaintiff has burden of showing inability to perform past relevant work).

## Conclusion

The Commissioner's decision denying plaintiff's request for disability benefits should

be AFFIRMED, and a judgment should be entered dismissing this action with prejudice.

## Scheduling Order

The Findings and Recommendation will be referred to a district judge.  Objections,

if any, are due January 26, 2010.  If no objections are filed, then the Findings and

Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a

copy of the objections.  When the response is due or filed, whichever date is earlier, the

Findings and Recommendation will go under advisement.

DATED this 6th day of January, 2010.

John Jelderks
U.S. Magistrate Judge